UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

ADE BROWN,

        Plaintiff,                  Case No. 1:19-cv-420

v.                                          Honorable Janet T. Neff

MOLLY DARLING et al.,

        Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. § 1915A(b) and 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Sandborn, Vashaw, Matthews, Maranka, Ferguson, Barber, Davis, Gardner, and Kerr.

## Discussion

**I. Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Oaks Correctional Facility (ECF) in Manistee, Manistee County, Michigan. The

events about which he complains, however, occurred at the Ionia Correctional Facility (ICF) in Ionia, Ionia County, Michigan. Plaintiff sues Prison Counselor Molly Darling, Resident Unit Manager Sabrina Davis, Deputy Warden Unknown Sandborn, Deputy Warden Unknown Vashaw, Prison Counselor Heather Matthews, Psych Unit Chief David Maranka, Corrections Officer J. Gardner, Sergeant J. Kerr, Captain Unknown Ferguson, and Inspector Unknown Barber.

Plaintiff alleges that he filed Case No. 1:18-cv-812 in July of 2018, which asserted civil rights violations by staff at ICF, some of whom are also named in this action. When Plaintiff's complaint in that case was served on the defendants, Defendants in this case began retaliating against Plaintiff by refusing to approve his 30-day loss of privilege waivers and placing him back in segregation. Plaintiff then filed two more civil rights actions asserting retaliation, Case Nos. 1:18-cv-1362 and 1:18-cv-1322.

In January of 2019, Plaintiff had been ticket free for eight months and asked the Security Classification Committee (SCC) if he could be moved to the general population. The SCC included Defendants Darling, Sandborn, Vashaw, Maranka, and Kerr. Plaintiff told Defendant Darling that he would not be filing any more lawsuits and Defendant Darling stated that Plaintiff would be allowed a 30-day waiver on his loss of privileges for the month of February. Approximately one week later, Defendant Darling was off work and Defendant Davis was making rounds. Plaintiff told Defendant Davis of the agreement he had reached with staff and Defendant Davis stated that she would go along with her staff.

On January 23, 2019, Plaintiff received an order of partial dismissal in case number 1:18-cv-1322, with Plaintiff's claims against Defendant Davis surviving the screening process. Defendant Davis was not working when Plaintiff received this order in the mail. Within the next day or so, Plaintiff received an order on case number 1:18-cv-812, indicating that he had stated a

retaliation claim.  On February 4, 2019, Defendant Darling made legal rounds and Plaintiff gave her his kite seeking a 30-day loss of privileges waiver.  Defendant Darling told Plaintiff he would get his waiver.  Plaintiff then showed Defendant Darling the order indicating that Plaintiff had stated a retaliation claim against her.  Plaintiff explained that he had promised to let her know about his lawsuits so that there wouldn't be any surprises.  Defendant Darling took Plaintiff's legal mail and continued on her rounds.

On February 5, 2019, Defendant Darling acted angry with Plaintiff during legal rounds and told Plaintiff that she would get back at him for suing her.  Plaintiff told her that the deadline for his motion for summary judgment was that day, but she told Plaintiff that she did not care.  Later that day, Defendant Gardner made rounds and Plaintiff asked him to take his mail and to give it to his prison counselor.  Defendant Gardner told Plaintiff that Defendant Darling did not want his mail and refused to take it.  Plaintiff grabbed his slot door and asked to see a supervisor.  Defendant Gardner told Plaintiff that he was going to write a disobeying a direct order on him.  Defendant Kerr subsequently came to Plaintiff's door and Plaintiff told him that Defendant Gardner was violating his First Amendment rights.  Plaintiff asked Defendant Kerr to take his mail to Defendant Davis.  Defendant Kerr stated that he would call Defendant Davis.  Plaintiff's mail was never taken.  Plaintiff held onto his slot for another fifteen minutes, but Plaintiff eventually surrendered his slot because he did not want to be gassed.

Defendant Kerr came to Plaintiff's cell some time later and gave him a false sexual misconduct ticket written by Defendant Darling, which asserted that Plaintiff had masturbated in front of her while she was making her rounds.  Defendant Darling further stated that Plaintiff had told her that he wanted to "fuck" her.

3

Plaintiff later gave his mail to Nurse Drew, who was passing out medication. Nurse Drew said that he would give it to Defendant Davis. The next day, Defendant Darling did legal rounds and told Plaintiff that when she had promised not to retaliate against him for his lawsuits, she did not know that she had been named as a Defendant. Defendant Darling then showed Plaintiff the mail he had given Nurse Drew. This made Plaintiff aware of the fact that Defendant Davis had refused to send out his motion for summary judgment, causing him to miss his deadline. Plaintiff told Defendant Darling that he intended to file a grievance on her for that and for the false ticket. Defendant Darling told Plaintiff that she was going to "jack" his parole by writing another misconduct on him. Approximately thirty minutes later, Plaintiff received a ticket for sexual misconduct and threatening behavior. Plaintiff attempted to file a grievance, but he was on modified access to the grievance process and his request for a grievance form was denied.

Plaintiff states that he spoke to Nurse Drew a few days later and was told that Defendant Davis knew about Plaintiff's deadline for the mail. On February 13, 2019, Plaintiff was taken to the segregation unit for his hearing and was found guilty of the misconduct tickets. Plaintiff was kicked out of the START program, which is required for parole, and was classified to administrative segregation on February 19, 2019. On March 5, 2019, Plaintiff was continued on administrative segregation by Defendants Davis, Barber, and Vashaw. Plaintiff claims that between February 26, 2019, and March 12, 2019, he was not given an in-person review with SCC members Davis, Matthews, Vashaw, Sandborn, Barber, and Ferguson in violation of policy which required him to receive a review every seven days.

On March 20, 2019, Plaintiff was transferred to the Marquette Segregation Unit, which prevented Plaintiff from completing his programming in the START program. Plaintiff also states that the eight-hour drive prevented family from being able to visit him. Plaintiff claims

4

that Defendants violated his rights to due process, equal protection and to be free from retaliation. Plaintiff seeks damages.

## II. Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr.*

5

*Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

## III. Due Process

Plaintiff claims that his due process rights were violated by his misconduct convictions, his placement in segregation, and his transfer to the Marquette Branch Prison (MBP). Plaintiff claims that the major misconduct charges against him were "false." He also complains that he did not receive a hearing before the SCC for the first three weeks of his administrative segregation.

The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989).

The Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). In *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. According to that Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his

6

sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 486-87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995).

Plaintiff's major misconduct charge and conviction affected a number of Plaintiff's interests, but none of them fall into either of the categories identified in *Sandin* as protected by due process, i.e., an inevitable effect on the duration of Plaintiff's sentence or an atypical and significant hardship. As to the first category, Plaintiff has not alleged a deprivation that will inevitably affect the duration of his sentence. A prisoner like Plaintiff, who is serving an indeterminate sentence for an offense committed after 2000, can accumulate "disciplinary time" for a major misconduct conviction. *See* Mich. Comp. Laws § 800.34. Disciplinary time is considered by the Michigan Parole Board when it determines whether to grant parole. *Id.* § 800.34(2). It does not necessarily affect the length of a prisoner's sentence because it is "simply a record that will be presented to the parole board to aid its [parole] determination." *Taylor v. Lantagne*, 418 F. App'x 408, 412 (6th Cir. 2011).

As to the second category, Plaintiff has not alleged that he suffered a "significant and atypical deprivation." Plaintiff asserts that he was placed in administrative segregation at ICF from February 13, 2019, until his transfer to MBP on March 20, 2019. Even though Petitioner was placed in a segregation unit at MBP, the Defendants in this action had no further involvement in his segregation placement. As a result, Plaintiff alleges that Defendants deprived him of due process by placing and keeping him in segregation for 40 days without weekly hearings on his continued placement.

Confinement in administrative segregation "is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." *Hewitt v. Helms*, 459 U.S. 460, 468 (1983). Thus, it is considered atypical and significant only in "extreme circumstances." *Joseph v. Curtin,* 410 F. App'x 865, 868 (6th Cir. 2010). Generally, courts will consider the nature and duration of a stay in segregation to determine whether it imposes an "atypical and significant hardship." *Harden-Bey v. Rutter*, 524 F.3d 789, 794 (6th. Cir. 2008).

In *Sandin*, the Supreme Court concluded that the segregation at issue in that case (disciplinary segregation for 30 days) did not impose an atypical and significant hardship. *Sandin,* 515 U.S. at 484. Similarly, the Sixth Circuit has held that placement in administrative segregation for two months does not require the protections of due process. *See Joseph v. Curtin,* 410 F. App'x 865, 868 (6th Cir. 2010) (61 days in segregation is not atypical and significant). It has also held, in specific circumstances, that confinement in segregation for a much longer period of time does not implicate a liberty interest. *See, e.g.*, *Baker,* 155 F.3d at 812-23 (two years of segregation while the inmate was investigated for the murder of a prison guard in a riot); *Mackey v. Dyke,* 111 F.3d 460 (6th Cir. 1997) (one year of segregation following convictions for possession of illegal contraband and assault, including a 117-day delay in reclassification due to prison crowding). Generally, only periods of segregation lasting for several years or more have been found to be atypical and significant. *See, e.g.*, *Selby v. Caruso*, 734 F.3d 554, 559 (6th Cir. 2013) (13 years of segregation implicates a liberty interest); *Harris v. Caruso,* 465 F. App'x 481, 484 (6th Cir. 2012) (eight years of segregation implicates a liberty interest); *Harden-Bey,* 524 F.3d at 795 (remanding to the district court to consider whether the plaintiff's allegedly "indefinite" period of segregation, *i.e.*, three years without an explanation from prison officials, implicates a liberty interest).

Plaintiff's confinement in administrative segregation for 40 days is less than the 60-day period in *Joseph* that the Sixth Circuit held was *not* atypical and significant. Thus, Plaintiff's confinement in segregation did not trigger a right to due process.

Plaintiff relies upon prison policies and prison manuals as the source of his right to due process. In other words, he contends that certain policies and prison manuals provide him with state-created rights by specifying requirements and procedures that prison officials must follow when charging a prisoner with misconduct or when investigating that misconduct.

Plaintiff's reliance is misplaced. As the Supreme Court stated in *Sandin*, using "mandatory language in prisoner regulations" as a source for interests protected by due process "stray[s] from the real concerns undergirding the liberty protected by the Due Process Clause." *Sandin*, 515 U.S. at 484. Prison regulations are "primarily designed to guide correctional officials in the administration of a prison." *Id.* at 482. They are not designed "to confer rights on inmates[.]" *Id.* Accordingly, the Court held that state-created interests "will generally be limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents or prison life." *Id.* (citations omitted). Plaintiff has not alleged that Defendants imposed such a restraint on him. Thus, he does not state a due process claim.

Nor does Plaintiff have a constitutional right to any particular placement or security classification. "[A]n inmate has no justifiable expectation that he will be incarcerated in any particular prison within a State . . . ." *Olim v. Wakinekona*, 461 U.S. 238, 245 (1983); *see also Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976). A change in security classification to a higher level of security, with nothing more, is not the type of atypical and significant deprivation in which an inmate might have a liberty interest. *See Sandin*, 515 U.S. at 485-86 (1995); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995); *Mackey v. Dyke*, 111 F.3d 460, 463 (6th Cir. 1997).

Finally, the extent that Plaintiff states that his transfer affected his ability to meet the conditions for parole eligibility, such a claim does not implicate a liberty interest. There is no constitutional or inherent right to be conditionally released before the expiration of a prison sentence. *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979). Until Plaintiff has served his maximum sentence, he has no reasonable expectation of liberty.

For all these reasons, Plaintiff's due process claims are properly dismissed.

## IV. Equal Protection

Plaintiff claims that other inmates with misconduct convictions for sexual misconduct and threatening behavior were not dismissed from the START program. Plaintiff states that his dismissal from the program and placement in administrative segregation violated his right to equal protection. The Equal Protection Clause commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. A state practice generally will not require strict scrutiny unless it interferes with a fundamental right or discriminates against a suspect class of individuals. *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 312 (1976). Plaintiff does not suggest that he was discriminated against because he is a member of a suspect class, and "prisoners are not considered a suspect class for purposes of equal protection litigation." *Jackson v. Jamrog,* 411 F.3d 615, 619 (6th Cir. 2005); *see also Wilson v. Yaklich,* 148 F.3d 596, 604 (6th Cir. 1998). In addition, as noted above, prisoners do not have a fundamental right remain to in the START program.

Because neither a fundamental right nor a suspect class is at issue, Plaintiff's claim is reviewed under the rational basis standard. *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby,* 470 F.3d 286, 298 (6th Cir. 2006). "Under rational basis scrutiny, government action amounts to a constitutional violation only if it 'is so unrelated to the achievement of any

combination of legitimate purposes that the court can only conclude that the government's actions were irrational.'" *Id.* (quoting *Warren v. City of Athens,* 411 F.3d 697, 710 (6th Cir. 2005)).

To prove his equal protection claim, Plaintiff must demonstrate "intentional and arbitrary discrimination" by the state; that is, he must demonstrate that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006); *Center for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) ("To state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff 'disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.'"). Plaintiff alleges disparate treatment here, but his allegations are conclusory. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.

In this case, Plaintiff states that he received two sexual misconducts and one threatening behavior misconduct. Plaintiff asserts that other unnamed prisoners received sexual misconducts, threatening behavior misconducts, or fighting misconducts, but did not receive the same treatment. Plaintiff fails to allege specific facts showing that any of the unnamed prisoners had three misconducts in the specific combination that he did, and that they received the misconducts within the same time period. Nor does Plaintiff allege facts showing that his past conduct was the same as the other unnamed prisoners.

On these facts, Plaintiff fails to allege that those who were treated differently were similarly situated in all relevant respects. *Umani v. Mich. Dep't of Corr.,* 432 F. App'x 453, 460

11

(6th Cir. 2011) (To be a similarly-situated person, "the comparative [prisoner] 'must have dealt with the same [decisionmaker], have been subject to the same standards, and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or [the defendant's] treatment of them for it.'") (quoting *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998)); *Project Reflect, Inc. v. Metropolitan Nashville Bd. of Public Educ.*, 947 F. Supp. 2d 868, 881 (M.D. Tenn. 2013) ("Plaintiffs . . . fail to plead the existence of a similarly situated comparator . . . [therefore,] the Complaint does not contain sufficient factual matter to state a plausible claim."). Therefore, Plaintiff has failed to state a claim for violation of his equal protection rights.

## V. Access to the Courts

Although Plaintiff does not specifically assert that his right of access to the courts was violated, he does claim that Defendants Darling, Davis, Gardner, and Kerr refused to mail out his motion for summary judgment in a timely manner in *Brown v. Conklin et al.*, Case No. 1:18-cv-554 (W.D. Mich.).

It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The principal issue in *Bounds* was whether the states must protect the right of access to the courts by providing law libraries or alternative sources of legal information for prisoners. *Id.* at 817. The Court further noted that in addition to law libraries or alternative sources of legal knowledge, the states must provide indigent inmates with "paper and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail them." *Id.* at 824-25. The right of access to the courts also prohibits prison officials from erecting barriers that may impede the inmate's access to the courts. *See Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992).

An indigent prisoner's constitutional right to legal resources and materials is not, however, without limit. In order to state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000. In other words, a plaintiff must plead and demonstrate that the shortcomings in the prison legal assistance program or lack of legal materials have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim. *Lewis*, 518 U.S. at 351-53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc). Moreover, the underlying action must have asserted a non-frivolous claim. *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (*Lewis* changed actual injury to include requirement that action be non-frivolous).

In addition, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3). "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 416.

13

A review of the docket sheet in Case No. 1:18-cv-554 shows that Plaintiff filed a motion to compel discovery on February 1, 2019, a motion for reconsideration on February 4, 2019, a reply brief on February 7, 2019, and a motion for summary judgment against all of the defendants in that case on February 11, 2019. (Case No. 1:18-cv-554, ECF Nos. 71, 72, 75, 76.) Plaintiff filed numerous other documents over the course of the next 10 days. (Case No. 1:18-cv-554, ECF Nos. 77, 78, 80, 81.) Under these circumstances, Plaintiff cannot show that he was prejudiced by Defendants' refusal to mail out his motion for summary judgment—or any other document—on February 5, 2019. As a result, his access to courts claim lacks merit.

## VI. Retaliation

Finally, Plaintiff claims that Defendants retaliated against him because of his pending lawsuits. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X*, 175 F.3d at 394. In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

The Court notes that Plaintiff's retaliation claims against Defendants Sandborn, Vashaw, Matthews, Maranka, Ferguson, and Barber are based on their failure to intervene on his behalf to prevent his placement in administrative segregation and his termination from the START program. It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005);

*Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987); *Vega v. DeRobertis*, 598 F. Supp. 501, 506 (C.D. Ill. 1984), *aff'd*, 774 F.2d 1167 (7th Cir. 1985). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Skinner v. Bolden*, 89 F. App'x 579, 579-80 (6th Cir. 2004) (without more, conclusory allegations of temporal proximity are not sufficient to show a retaliatory motive).

Plaintiff merely alleges the ultimate fact of retaliation against Defendants Sandborn, Vashaw, Matthews, Maranka, Ferguson, and Barber. He has not presented any facts to support his conclusion that these Defendants retaliated against him because he filed lawsuits against Defendants Davis and Darling. Accordingly, he fails state retaliation claims against Defendants Sandborn, Vashaw, Matthews, Maranka, Ferguson, and Barber.

Plaintiff specifically alleges that Defendants Gardner, Davis, and Kerr refused to send out his mail, causing him to miss his deadline for filing a motion for summary judgment in Case No. 1:18-cv-554. However, as noted above, Plaintiff successfully filed his motion for summary judgment in that case on February 11, 2019, and it was not rejected as untimely. The docket entry for the motion includes an image of the envelope it arrived in, which shows that the motion was postmarked on February 6, 2019, one day after Plaintiff first attempted to mail the document. (Case No. 1:18-cv-554, PageID.410.) In *Thaddeus-X*, the Sixth Circuit recognized that some threats and deprivations are too minimal to constitute adverse action. Citing *Bart v. Telford*, 677 F.2d 622 (7th Cir. 1982), the *Thaddeus-X* court held that minor harassment is insufficient to

15

constitute adverse action, because recognition of such a standard would "'trivialize the First Amendment.'" *Thaddeus* 175 F.3d at 398-99 (citing *Bart*, 677 F.2d at 625). The Court concludes that the conduct of Defendants Gardner, Davis, and Kerr in allegedly delaying Plaintiff's outgoing mail for one day is not sufficiently adverse to support a retaliation claim.

Finally, Plaintiff claims that Defendant Darling wrote false misconduct tickets on him, causing him to be terminated from the START program and reclassified to administrative segregation. Plaintiff alleges that Defendant Darling made specific comments to Plaintiff indicating that the reason for her actions was a desire to retaliate against him because of his pending lawsuits. Therefore, the Court concludes that Plaintiff's retaliation claim against Defendant Darling is not frivolous and may not be dismissed on initial review.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Sandborn, Vashaw, Matthews, Maranka, Ferguson, Barber, Davis, Gardner, and Kerr will be dismissed for failure to state a claim under 28 U.S.C. § 1915A(b) and 42 U.S.C. § 1997e(c). The Court also will dismiss Plaintiff's due process, equal protection, and access to courts claims against remaining Defendant Darling. Plaintiff's retaliation claim against Defendant Darling remains in the case.

An order consistent with this opinion will be entered.


Dated:   April 13, 2020                         /s/ Janet T. Neff
                                                Janet T. Neff
                                                United States District Judge